Thank you. Good morning, your honors. Arielle Sturt on behalf of the Bank of New York Mellon. In this case, we have no dispute that the HOA sale was void for violating the automatic stay. However, the district court denied the consequence of that violation by denying relief and did so over reading the dicta from Buchan Groves, applying the case more broadly than the opinion justified. As a lien holder, the Bank of New York Mellon has standing to seek a declaratory order from federal district court under both Nevada state law and the Federal Declaratory Relief Act 28 U.S.C. 2201. The district court erred in determining that Buchan Groves, a case about we would describe as prudential bankruptcy standing to appeal from an adverse bankruptcy automatic stay order, deprived the Bank of standing to pursue an original action in a federal district court. We believe that district court was wrong for a couple of reasons. First of all, Buchan Groves by its own terms is not applicable. Buchan Groves limited itself to bankruptcy standing and more specifically to standing to appeal from an adverse bankruptcy order. That's what the case said by its own terms. And here in our case, we have no appeal from a bankruptcy order. We sought jurisdiction originally from the district court and asked the district court not to review or even to administer anything having to do with a creditor-debtor relationship, but simply to declare based on the bankruptcy law, among other factors, that the sale did not affect the Bank's deed of trust. There was no appellate review requested, nor was there any bankruptcy to administer. And so for that reason, Buchan Groves by its own terms did not apply. But further, in our reading of Buchan Groves, while the case doesn't describe itself as such, it's really a prudential standing case with specific application in the bankruptcy appellate context. Buchan Groves described its concerns as twofold. One, that by giving creditors standing to seek appeals from automatic state determinations, the role of the trustee in a bankruptcy could be interfered with. And secondly, it noted that oftentimes in bankruptcy litigation, there are rights of parties that are not technically parties to the litigation itself that are affected. And so by giving creditors standing to challenge in appeals automatic state determinations, the concern was that the bankruptcy courts may be flooded with litigation. And so while the court did not to prudential standing the concerns because the determination was not that there was a lack of controversy or a lack of injury. And so for those reasons, the decision in its concerns applied a zone of interest analysis, but did so in very limited terms, saying that when a creditor appeals when the trustee has not appealed, that there is no appellate jurisdiction. But the court did not say, for example, acting on its own before the bankruptcy court would lack standing. And in fact, in Buchan Groves, the creditors did participate with the trustee. So in our view, the Buchan Groves decision simply stands for less than the district court read. Counsel, I mean, are you aware of a case where a creditor like your client has been able to do what you're trying to accomplish here? I mean, I understand you're trying to distinguish Buchan Groves on its facts, but the statement there seems fairly clear in terms of a creditor's ability to challenge an automatic stay. So what case shows that a creditor like your client can do this? There are a couple of cases, Judge, that admittedly not at the appellate level, but where Buchan Groves has been questioned in terms of the breadth of the dicta that would suggest that a creditor cannot invoke any protection of the automatic stay, including a couple that come while not directly on point from district or bankruptcy courts within the Ninth Circuit. We cited in our brief the Leeds case, which is a bankruptcy court in the District of Nevada, where the judge in that case adjudicating a retroactive annulment request, expressed some to, in all circumstances, bar creditors from seeking any protection under the state. There is the International Forex case that came out of the District of California that the Leeds case cited that expressed similar concerns. And we have also in the Ninth Circuit cases, well, again, admitting that they're not directly on point, do speak about the fact that automatic stay is intended to protect creditors as well as debtors. And I would point out, Your Honor, that there's two cases in particular, one before Buchan Groves and one subsequent to Buchan Groves that both said the same similar things. One is a computer communications case in which the Ninth Circuit acknowledged and noted that the automatic stay is there to protect debtors and creditors from piecemeal dismemberment of the debtor's estate. And subsequent to Buchan Groves in 1995, there's a case, Dean versus Trans World Airlines, 72 F3rd 754, in which the court, including a sentence that said as follows, and I'll read it for a record, the automatic stay also assures creditors that the debtors and other creditors are not raising to various courthouses to pursue independent remedies to drain the debtor's estate. And while, again, not completely on point to our situation here, I think those cases do illustrate the point that automatic stay protects creditors. It prevents one creditor from violating the law to the detriment of the other creditor, which is precisely what happened here. Here, the homeowner association violated the stay. And the consequence for the bank as the creditor that actually did not violate the automatic stay is severe because not only is it at risk of losing its collateral as a result of the automatic stay violation, but it also cannot recover personally from the debtor because the case I think presents a very clear understanding, I should say illustration that it is correct to read Buchan Groves as uniquely limited to bankruptcy standing, appellate bankruptcy standing, and not as a more broad indication that there is no interest protected by the automatic stay provision that the creditors can can assert. Is there anything in the record that explains why the trustee might not have pursued enforcement of the stay in this context? Not that I'm aware of, Judge. I think because this was a Utah, I'm speculating a little bit here, but because this was an automatic, this was a bankruptcy in Utah rather than Nevada, they may not have been aware of all of the HOA sales that were a uniquely Nevada phenomenon during that time, but that's speculative on my part. There's nothing in the record that would definitively explain why the trustee elected not to enforce it, but I think it raises an interesting follow-up point, which is that if we take Buchan Groves and the way the district court applied it at face value and push it to its logical conclusion, had the creditor rather than the trustee, and we can honestly this is not happening either, but if we were to assume that the creditor would have made a request in the bankruptcy case for relief from the automatic stay violation under the district court's understanding of Buchan Groves, the debtor, even in the bankruptcy court, would not have had the ability to do that. It would not have had the standing to do that until we would be left what we think would be a paradoxical situation where neither the trustee, for whatever reasons motivated it, nor the creditor could invoke help in protecting from the violation of the automatic stay. And we believe that this is just not only the logical and necessary conclusion from the logic that the district court read into Buchan Groves, it's also, in our view, an absurdly narrow view of the automatic stay provision, which as the court, as the Ninth Circuit said in the Transworld case, exists in part to protect creditors from one another. In other words, from one creditor jumping the line and harming another creditor. So you listed some cases there in answer to Judge Hunt's question. One case you didn't mention is the Nevada Supreme Court portraits place case. That seems to be squarely on point. I guess maybe you didn't mention it because it's not federal court, right? But it is interesting because it's not federal court, so it doesn't really bind us, obviously. But on the other hand, it is from the Nevada Supreme Court and the backdrop of all of this, obviously, is the super priority issue, which is truly a Nevada law thing. So it's interesting to me that the Nevada Supreme Court seems to clearly think that the bankruptcy stay does not allow to happen what has happened here, at least in portrait's place. So it would be odd that they, when this case was removed, was this case removed from the state court system? No, Your Honor. This was an original. We filed it in federal court. Okay. All right. Because if this was in state court, it seems like the Nevada Supreme Court would agree with you based on portrait's place, unless I'm missing something. I think that is correct, Your Honor. And the reason I hadn't mentioned the portrait's palace case is I just hadn't had an opportunity to get there. And I'm glad you're focused on it because in case in our view, it's arguably, and I guess I say arguably, I'll argue today that it is actually binding for this court as an expression of state law. And the reason I say that, understanding that it interpreted and applied federal law, which is not the province of the state court, it nevertheless found as a matter of state law that a sale that's void under federal bankruptcy, the district court's original jurisdiction, under the diversity statute, we were asking the district court essentially to apply state law. And as a matter of state law, of course, the article three jurisdictional requirements and the article three standing requirements don't come into effect. But we would argue that after the Supreme, the U.S. Supreme Court's Lexmark decision, the prudential standing, at least as it has to do with the zone of interest analysis is probably obsolete anyway. And we're really looking at whether there is a statutory right of action, which under federal law, we can argue back and forth as to whether a creditor is actually in the zone of interest that Congress intended to protect with the automatic state. But certainly as a matter of state law, that has already been baked into state law. And the answer in the Portridge Palace case has been definitively and affirmatively that yes, a bank trying to protect its deed of trust by merely showing that an automatic state was wins as a matter of state, a quiet title or declaratory relief law. And so we do believe that the Portridge Palace cases is directly on point and very relevant to accomplish what we asked the district court to do, which was to give us sitting in diversity, a state law based remedy. So, so we do believe that, that, that, you know, we acknowledge that the federal courts are the courts that interpret the bankruptcy provisions, but I think here we're a step forward as determined as a matter of state law, that the bank should win. And with that, I have about two minutes and 45 seconds left. I'd like to reserve that for rebuttal if that's okay. That's fine, counsel. Thank you. Mr. Bond, are you going first? I understand that I am. Yes, thank you. Michael Bond on behalf of 732 Hardy Way Trust. I'd like to start out by pointing out, we, part of the record is the chapter 13 bankruptcy filings and the case. The trustee abandoned the property. Section 60 of the chapter 13 plan, the owner identified the property as collateral to be surrendered. Section six of the plan provided upon confirmation, the automatic sale would be terminated as the property. And that stay was, the plan was submitted on a few days before this foreclosure sale and entered on September 22nd, 2014, a few days after the foreclosure sale. The schedules also show the property had a value of about $100,900 and had a secure debt of $188,595. That's all in the record on appeal before the court. So this had zero value for the debtor. And the case law is replete that the provisions of the bankruptcy court are there for the protection of the trustee and the estate, not for creditors. Now counsel argue that the Pecan Grove case had to deal with an appeal, but there's another case closer on point, the Mangione versus Globe investment case, where a creditor having a third party lien filed a complaint to set the foreclosure sale aside. Very similar to what we have here because here the HOA lien does take priority over the bank's deed of trust. So this is a senior lien holder. And the court in that case found that they didn't have standing to come and set the sale aside because section 362 of the automatic stay is intended solely for the benefit of the debtor's estate, not for the creditors. This court also has issued a couple of unpublished decisions recently. Deutsche Bank versus Madera Canyon, that was on September 4th, 2020. Docket 19-16719, similar situation to this, a Nevada HOA foreclosure sale where the court again upheld the holding of Pecan Grove. Counsel? Yes. You're aware that those cases have no precedential effect? Yes, I am your honor. So you probably will, from my point, you probably would be better to stick to cases that have some precedential value. Okay. Well, I'm just saying this court has recently upheld that and the Pecan Grove case is still good law in the state of Nevada. Pecan Grove has also been upheld in the 10th circuit in Lopez versus Bells, which we cited a 1994 case. And... Counsel, did I hear, I'm just trying to, did I hear correctly that case you were talking about the first case? What was that case? That other than Pecan Grove, is that Meg Nagalia? The unpublished decision? No, an earlier one. I thought that maybe, maybe it was unpublished, but you said it was... No, no. Mangione, Mangione is published. Second circuit case you're talking about? Excuse me? Is that a second circuit case? No, it's a ninth circuit case. 8-67-F-5-56, ninth circuit, 1989 cited, page 18 of our brief. Yep. So I was going to go on to say that the 10th circuit has also agreed with the Pecan Grove's matter in a couple of cases and just point out the debtor's bankruptcy was filed in Utah. Counsel, so going back to that, that's why I was looking the case up at you. The problem with that case is it also is a bankruptcy case. So saying somebody doesn't have standing in bankruptcy, for all the reasons that they provided, it could be like a prudential reason. But it's one thing to say that, and it's another thing to say that if in fact a bankruptcy sale is void and somebody can't raise it and that they don't have standing, that somehow they can't raise it in another context. It seems to me like that'd be a little bit like, the only other area I could think of that has contracts that are void is say a criminal contract. Say it's void because it's a criminal contract. And I don't know why you'd say somebody doesn't have standing in a different case to say that contract over there is void because it seems weird to say. I understand why in bankruptcy we would limit standing for prudential reasons in order to make sure that the creditors aren't driving the bankruptcy, right? So the trustee and the judge are driving the bankruptcy. It's very different, it seems to me. It seems to me that the Nevada Supreme Court's position, the court has placed that it's void and therefore anybody can raise that and say that it's void in different litigation. I don't know why they wouldn't be able to do that the same way a criminal case you would see, you know, a criminal contract, you would say that contract's void and the court can basically kind of take judicial notice of that. Well, your honor, I mean the Ninth Circuit and other circuits agreeing with it have said multiple times that a creditor doesn't have the standing to raise the automatic state. In a bankruptcy proceeding, right? Well, in the Mangione case, it was a bankruptcy trustee sale of a debtor's house. But it came out of bankruptcy. It was a bankruptcy case that was appealed to a district court and then appealed to us. Well, we have the, we're just trying to organize my thought here and I have a couple seconds left. The Ninth Circuit case law is that you just, you have to, pardon me, they filed this case trying to set aside the foreclosure sale. They have not shown fraud or pressure on printers or any other grounds for equitable relief. They brought this action and the only thing that they have to go on is a violation of the automatic state, which does not affect them whatsoever. It does not affect any other party. Let me ask you about the equitable. You say they don't have the equity, but and if I recall correctly, your standing on the bankruptcy state, they don't, they aren't open. They're not, they shouldn't be allowed. The second, you know, the first prong is, was the sale super cheap? And I think we can all agree the sale was super cheap. It was, you know, $7,000 for something that you just said was worth over a hundred. But let's just put that aside, even if we can't agree with that. So the whole issue here becomes whether or not it was unfair to use the Nevada spring courts. You know, we can say fraud, but I don't think fraud really applies here. I think unfair. Well, it seems to me in theory, even if you don't have standing to present the bankruptcy argument, why couldn't you, especially in light of portrait's place, the Nevada spring courts own decision, basically, why couldn't you say what's unfair, the violation of the bankruptcy state, even if you don't have standing to directly raise it, you can raise it as being as, as showing that the transaction was unfair and then make the commercial and then make the argument that it was in an equitable sale. The case law is very clear. There has to be a causation between the fraud or practical unfairness and the unreasonably low price now $7,000. And here they have not shown any causation between the violation of the automatic stay and the unreasonably low price, but the golden versus here, because I assume the reason the bank didn't work. Oh, I mean, one of the, one of my colleagues, I think asked earlier, why didn't the trustee object? But I think the answer is the trustee didn't object because, because the bankruptcy state was not going to get anything out of this because, because between the various leans there, they were way underwater. So, but the bank couldn't foreclose because of the state, right? So the bank couldn't come in there and protect his centers because of the state, but your client came swooped in and did that and violated the state. And then, and now they're in, there seems to be an unfairness to that, but there has to be, first of all, there's nothing in the record that shows the bank attempted to foreclose the properties. It was because it would have violated the state. Well, there's nothing to show that they even attempted before the debtor filed bankruptcy. So there's nothing to show that even attempted to foreclose. And again, under the Nevada law, Goldenverse, Tamiasa, the Shadow Canyon, the Shadow Wood case, there has to be a causation between the fraud or pressure on fairness and the unreasonably low price. And they have not shown any causation between those. So for that reason, the holding of the district court should be upheld because there's zero causation on those. And again, we're going to rely on Pecan Grove. They have no standing to raise it. My time is up and I'll yield to the court. Thank you. Good morning, Your Honor. My name is Ryan Hastings and I represent Enchantment at Sunset Bay Condominium Association. I guess I'll pick up where we left off in talking about the court's authority to set aside a foreclosure sale. I would say that the bank had more chances or other things it could have done to protect its interests aside from simply foreclosing. I know the discussion previously was, well, the bank couldn't foreclose. It could have attended the sale. It knew about the sale. It received notice of the sale. It could have attended the sale and made a bid. It could have done many things. It could have reached out and made a case that would have satisfied the super-priority portion of the association's lien such that its deed would not have been affected. I would expect, counsel, that the reason that it didn't do that is because it was relying on the conditions in your CCRs. And it turned out, at the time, nobody knew how that was going to turn out. It turned out that the Madison Supreme Court said that those super-priority applies regardless of those conditions. In other words, you guys can't bargain away your super-priority-ness, I guess. But why isn't that also sort of an unfairness thing? Even if the Madison Supreme Court has said that's what the law is after the fact, you still arguably sort of misled them, right? You basically told them something that they relied on to their detriment, and then it turned out that they kind of got the rug pulled out from under them. So why doesn't that also similarly go to the unfairness issue on the equity? Yeah. So, first thing, the association didn't draft these CCRs. The declarant did. But that wasn't really something that was briefed. But another reason why I don't think that the CCRs could be looked at as... The declarant, you mean? Yeah, the developer. Associations don't draft their own CCRs. Developers do. Associations aren't leading banks down a primrose path that they don't try to make them believe something that's inaccurate. No, but having these clauses, I assume that when somebody's thinking about why should we put these in there? Because banks will be worried about whether that's a super-priority will knock them out. And they'll be, well, we'll put this clause in there, and that'll make sure that people that actually buy in our subdivision will actually have some... They'll actually get loans. They'll actually be able to get loans. So there's some... Yeah, I mean, there's some... To the association. I understand, John. Let me get to the point why I still don't believe that that represents unfairness. Because you can't look at that provision without also looking at the other provisions that put bank on notice, that that provision could never mean what it states. And this is in our brief. Council, district court... Didn't a federal district court... I'm sorry? Didn't a federal district court reach the conclusion that's the opposite of what the Nevada Supreme Court... I mean, some courts reached the conclusion that's the opposite of what the Nevada Supreme Court ultimately reached on that issue, I think. So you're about to tell me nobody could possibly reach that conclusion, but I think some courts did. No. No courts found that CCNRs in and of themselves constituted fraud, oppression, or unfairness. There has been... No, no, no. What I'm saying is that some courts had found that those actually prevented it from being a super priority lien. And then the Nevada Supreme Court came in and said, no, and sort of definitively answered that question. But some courts had reached the opposite conclusion. So I'm just saying that I think this was a question that could have gone either way. Well, your honor, I can't speak to what was briefed before those courts because I don't know what cases you're talking about specifically. But I will say that in this case, the CCNRs have other provisions, which section 5.10, which addresses the priority of assessment liens. And those provisions make it clear that CCNRs are subject to the priorities established by 3116. Not only that, you have the Nevada Supreme Court's understanding of 116-1104 that mandates that associations, whether it's in a representation that's made to a lender in a letter or in CCNRs, do not get to waive their rights by saying that their super priority interest is going to be less than. Also, the bank is aware of Nevada law, NRS 116-1206-1, that puts the bank on notice that CCNRs cannot override Nevada law as it relates to the priority of assessment liens. So the bank is, yeah, the bank read the CCNRs and first of all, there was no evidence suggesting the bank's read CCNRs in this case. So there is no evidence before this court that they were misled by that provision such that it would constitute fraud, oppression, or unfairness under the decision of the Supreme Court in Shadow Canyon. But even if there was evidence that they had reviewed the CCNRs, they would have also reviewed the CCNRs provisions that are inconsistent with that understanding. They would also be charged with knowledge of the laws that relates to 1206, which says CCNRs don't get to trump Nevada law as it relates to priority or anything. So to say that that represents unfairness, the association would disagree with that vigorously. In other words, Judge Valencia, can I ask one more question? Of course. I'm trying to figure out practically why your client, Mr. Hastings, cares. Can you just tell me why your client, when I saw the lineup here, as I understand, of course, why Artie Way cares, why does your client care? I mean, what's the institutional interest here? Very good question, Your Honor. And maybe I even should have led with that a little bit. So the association's position in most of these cases is somewhat unique. We always try to tell courts at the very outset when it's primarily a quiet title dispute between these parties, we stand up and we try to even get out of those lawsuits and say, we don't have any business being here. We don't care whether the court ultimately finds that the bank's deed of trust was extinguished or not. But we get drug back in, obviously, because part of what the bank asks in the alternative is to set aside these sales under the Shadow Canyon analysis. And if the court were to do that, my understanding of the court's authority under the Shadow Canyon case would be to literally set aside that sale and the association would be once again a party because of its lien interest being reinstated. That kind of remedy is also difficult in these cases where you oftentimes don't have the former homeowner, which would be put back in possession of the property. And so, I guess I would say to the extent that the remedy can perceive or being evaluated by this court would be to make a finding that the district court erred and should have issued a declaration that the bank's deed of trust survived the sale, then the association really doesn't have a dog in that fight. Okay. I'm clear on that. So, and I'll ask your opposing counsel too on this, but I think, yes, if we were to completely set aside the sale, but I think they're also saying that we could just, the sale could go forward, but that their lien still, that basically Hardy Way owns the property subject to their lien is one way this could go, right? So, that's what I understand them to be asking. And if that's... I'm sorry, your honor. I didn't catch what you said. So, if that's the case, if all the court was to do is reach the conclusion that Hardy Way owns the property, you know, so they don't, we don't set aside your sale, but Hardy Way owns the property subject to the bank's lien, then you don't care. Is that what, did I hear you right? That is correct. So, I guess, let me go back to appellant's counsel. Is that something you're asking for? Are you asking for us to set aside the sale or? Well, let's finish with these more questions. All right. Thank you, counsel. Now we'll go to rebuttal. Thank you. Answering that question directly, our general position, our general preference is that the bank's interest be deemed to have survived the association sale, but not that the association sale be set aside entirely. And that's mostly motivated by practical concerns like Mr. Hastings' client. Our client shares the concern about a homeowner who may have been untitled years ago, and is now a stranger to these proceedings, all of a sudden finding himself or herself back untitled. And it's just administratively a little bit more, and conceptually more complicated. And so, when we alternatively ask for the relief, it's really with cases like this in mind, if we're right, and I think everybody agrees that we are right, that a violation of the automatic stay renders the sale void, it becomes a question of what is the consequence of that. And for the former homeowner, the consequence may be that they don't really care one way or the other, and it would be up to them to seek relief either in the bankruptcy court or in another venue. What is the bank seeking? I think that's what Judge Van Dyck's question is. What is the remedy that the bank is seeking? Are you thinking to have the property still subject to the bank's deed of trust? That's exactly the remedy. That's it. And briefly in the minute, and change remaining, I'd like to address the fraud, oppression, and unfairness in a little bit of the discussion with Mr. Bone. It is correct that the Supreme Court has said that insufficiency of price, however gross, cannot by itself justify setting aside a sale. But it has never said the opposite of that. The analysis really is that an insufficient price is an indicia of fraud, oppression, and unfairness, and that's really what the court is concerned with, whether the sale is infected with fraud, oppression, and unfairness. And so if we have nothing but an absurdly low price under Golden v. Tomiyasu, as recently confirmed in Shadow Canyon, that's not enough. However, if we have other indicia of unfairness outside of the price, we do not need to show a causal connection between that and the low price. Stated simpler, perhaps, if we have an unreasonably low price, we have to show that fraud, oppression, and unfairness caused it. But if we have fraud, oppression, and unfairness, we don't have to show that they caused anything with respect to the price. So the violation of the automatic stay in and of itself, along with the CC&R violation in and of itself, would be sufficient to constitute unfairness that would invoke the court's equity jurisdiction. I'm not characterizing that as unfairness and oppression, the CC&Rs. The Nevada Supreme Court, in footnote 11 to the Shadow Canyon case, listed a non-exclusive list of things that could rise to the level of fraud, oppression, and unfairness, and one of them was a misstatement that the association sale would not affect the deed of trust when in fact it would. And so it did not specifically say CC&Rs, but in our view, a CC&R is a recorded covenant that's subject to constructive knowledge by the world is such a communication. And there have been federal district cases and a handful of state district cases where the CC&Rs, along with other communications, were held to constitute fraud, oppression, and unfairness. So in this specific case, what are you asserting to be the fraud, unfairness, and oppression in addition to the price? In addition to the price, it would be the violation of the automatic stay as not only rendering the sale void, but separately as a factor of fraud, oppression, and unfairness. I agree with Judge Van Dyck that it's really unfairness that we're talking about here. And in addition to that, the dishonor of the CC&Rs, which we understand the Nevada Supreme Court in 2014 did what it did. But prior to that, we believe that that did have an effect on not only this bank, but all of the bank's understanding of what the HOA law in Nevada was. It wasn't until 2014, September 18th of 2014, when SFR Investments was published, that those mortgage savings provisions were invalidated. I understand that the HOA's position is that they were invalid all along, but that kind of begs the question of why they were there. Counsel, just so I'm clear, you're saying that the evidence that you have of and the price, is there anything else? I don't think so, Your Honor. I think that's it. And what's your response to opposing counsel's observation that the bank had other avenues it could pursue to preserve its interest in the property? I think, Your Honor, there's two responses to that. One is, it does not address the automatic stay argument. Even if we had other avenues, the fact that this was a void sale makes that kind of a non-issue for the association and for the buyer. But looking at it just within the perspective of fraud, oppression, and fairness, that becomes an equitable balance that the district court should do, considering that factor and the possibility that the buyer may have been a bona fide purchaser against the bank's rationales and reasons for not doing, and essentially balancing the equities, which the court here did not do. The district court here instead went to summary judgment and said that none of these factors could even rise to the level where such a balance would make sense. So that would be, if we lose on the automatic stay issue and we're just an equitable balance, we would ask for a remand for a trial on equitable balance. Are there any other questions for our counsel? I have a couple of just really quick factual questions I want to make sure I'm clear on. You don't dispute that your client received the notices of the HOA's foreclosure process, is that right? That's correct, we don't dispute that. And you don't dispute that your client never made any efforts to tender the super priority amount? Uh, no, we don't dispute that. I'd love if, and we're over time here, but if the court would indulge it, I'll add a little addendum to that. Briefly. Which is that as we found in recent jurisprudence from the Nevada Supreme Court, if we can show that such a tender would have been futile based on prior conduct, a tender would have been excused. And that's not something that was developed in this record, but should there be a remand? That would be my follow up question. In the record, we have no idea if it would have been futile or not, because we don't have anything there. Not in this record, but should this court remand on other factors, I'm confident we could build such a record, but you don't have that name. Sorry, one last question. When did your client learn about the bankruptcy? Your Honor, I'm not sure that that's set forth in the record, but I believe it would have been just as part of the normal notice provisions from the bankruptcy court itself. It would have been, we would have been listed in the creditor matrix and we would have learned of the bankruptcy concurrently or shortly after its filing. Great, thank you Judge Rawlinson for the leave to ask this question. Judge Van Dyke, do you have any final questions? Good, thank you Judge Rawlinson. All right, thank you to all counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Hunsaker, Vandyke